William GILES, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Local 664 of the United Auto Workers Union, Don Marino, President, Lope Rivera, Secretary, Marcel Service, Treasurer, William Palmer, Trustee, Herb Smiley, Trustee, Louis Benitez, Trustee, Fred Wickham, Zone Committeeman, and Doug Sosa, District Committeeman, Defendants.

No. 92 Civ. 3782 (JES).

United States District Court,
S.D. New York.

July 23, 1993.

Ernest H. Hammer, New York City, for plaintiff.

Burke Horan & Macri, New York City (David F. Horan, of counsel), for defendant G.M.

Eisner, Levy, Pollack & Ratner, P.C., New York City (Nicholas Fish, of counsel), for defendants Local 664.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Defendants General Motors Corp. ("G.M."), Local 664 of the United Automobile Workers Union, and the officers, representatives and trustees of Local 664 named as defendants (collectively "Local 664"), move to dismiss the above-captioned action as time-barred. For the reasons that follow, defendants's motions are denied.

## BACKGROUND

The following recitation of the relevant facts for this motion are taken from plaintiff's verified complaint. Plaintiff William Giles ("plaintiff" or "Giles") worked as an auto worker for defendant G.M. at G.M.'s auto plant in Tarrytown, N.Y. until he was dismissed on November 29, 1990, one day after Tarrytown police and G.M. representatives, acting on a tip from Giles's wife following a domestic dispute, apprehended him. After questioning Giles, those authorities searched Giles's locker at the plant and then his car, where they found an unloaded gun under the car's hood and arrested him. Eventually, Giles pleaded guilty in the Village Court of North Tarrytown to a misde-

meanor, and was sentenced to a conditional discharge.

On November 29, the day after his arrest, Giles reported to work at the Tarrytown plant and met with representatives of both G.M. and Local 664. At that meeting, certain of the union officials stated that Giles had two choices: (1) summary dismissal from G.M. and future blackballing from the auto industry, or (2) voluntary relinquishment of his job at the Tarrytown plant and accepting the following: (a) a transfer to the G.M. plant in Kansas City, Missouri, the place from which he had been transferred to the Tarrytown plant in 1989, (b) coverage under G.M.'s Guaranteed Income System for 85% of his regular weekly earnings until fully reestablished at the Kansas City plant, (c) continued receipt of medical benefits, and (d) no reference in his file to the reasons for quitting nor any indication of discharge. Plaintiff accepted the second alternative, but when he arrived in Kansas City he was told that he was no longer an employee of G.M. and that he would not be accepted back. He spoke to UAW officials in Kansas City who advised him that he must first withdraw his resignation and pursue a grievance for reinstatement.

Giles responded by going to Detroit to meet with UAW International officials. There he was told, once again, that he needed to withdraw his resignation and submit his firing to grievance procedures. Furthermore, he was informed that the alleged offer by G.M. could not possibly be accomplished under the collective bargaining agreement then existing between UAW and G.M. Giles returned to Tarrytown, but was refused help with any grievance by Local 664.

On or about February 5, 1991, Giles filed a complaint with the National Labor Relations Board ("NLRB"), supplemented by a statement on February 13, 1991. On April 16, 1991, the NLRB issued its decision that Local 664's refusal to assist Giles was not "motivated by arbitrary, invidious, discriminatory or otherwise unlawful considerations." Over one year later, on or about May 7, 1992, Giles commenced the instant suit in the Supreme Court of the State of New York, Bronx County, alleging claims for unlawful discharge by G.M. and for breach by Local 664 of its duty of fair representation, and further alleging, *inter alia,* claims for fraud, deceit, and breach of contract all arising out of the alleged November 29 representations. On May 26, 1992, defendants removed the case to this Court.

## DISCUSSION

The principal issue raised by this motion is whether plaintiff's action is based upon the collective bargaining agreement between G.M. and the union, and as such is preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988) ("LMRA"), and barred by the six month time period applicable to section 301 claims.[1] If, however, plaintiff's claims are not based upon and do not require the Court to interpret the collective bargaining agreement, they are neither pre-empted, *see Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915–16, 85 L.Ed.2d 206 (1985), nor time barred.[2] *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

Viewing the plaintiff's complaint in a light most favorable to plaintiff, as the Court must

1. Congress designed section 301 to give employees a cause of action for violations of a labor contract between employers and labor organizations to which employees are third-party beneficiaries. That statute contemplates the need for federal uniformity in the interpretation of labor contracts, and the Supreme Court has therefore held that it pre-empts all non-uniform and possibly contradictory state laws. *See Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *accord Int'l Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 862, 107 S.Ct. 2161, 2168, 95 L.Ed.2d 791 (1987).

2. Plaintiff argues that, even if his claims are pre-empted by section 301, defendants's active misrepresentation lulled him into delaying the institution of his lawsuit. However, that argument has no merit since plaintiff was aware that defendants would not live up to their alleged promises at least from the time the NLRB dismissed his administrative claims, more than twelve months before he brought the present action, and well beyond the six month statutory period for section 301 claims.

on a motion to dismiss, *see, e.g., Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02; 2 L.Ed.2d 80 (1957), it is clear that plaintiff alleges that the defendants made specific representations upon which plaintiff relied to his detriment, which representations are wholly separate and apart from the collective bargaining agreement and thus not "inextricably intertwined" therewith. *See Allis–Chalmers Corp. v. Lueck, supra,* 471 U.S. at 213, 105 S.Ct. at 1912; *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 26 (2d Cir. 1988); *Anderson v. Ford Motor Co.,* 803 F.2d 953, 956–57 (8th Cir.1986), *cert. denied,* 483 U.S. 1011, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987).

It follows that defendants's reliance on *Allis–Chalmers* is misplaced.[3] Indeed, as the Court in *Allis–Chalmers* noted:

> It is perhaps worth emphasizing the narrow focus of the conclusion we reach today. We pass no judgment on whether this suit also would have been pre-empted by other federal laws governing employment or benefit plans. Nor do we hold that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301. The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis. We do hold that when resolution of a state-law claim is *substantially dependent* upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, *see Avco Corp. v. Aero Lodge 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), or dismissed as pre-empted by federal labor-contract law.

*Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. at 1915–16 (emphasis added).

Consistent with that analysis, courts have held that section 301 does not pre-empt all state law claims arising out of labor disputes

unless those claims are substantially dependent on an interpretation of a collective bargaining agreement. *See, e.g., Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (interpretation of state law of retaliatory discharge not dependent on the terms of the private labor contract); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (employees subject to collective bargaining agreement permitted to assert claims based on breach of an independent agreement); *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22 (2d Cir.1988) (no pre-emption on motion to dismiss where employee's claim is that employer breached an alleged independent contract made with the employee).

In the instant case, plaintiff's claims are not derivative from, nor do they depend on any interpretation of, the collective bargaining agreement. Although plaintiff's allegedly wrongful discharge may have afforded the factual context in which the alleged misrepresentations to plaintiff were made, those representations are nowhere contained in the collective bargaining agreement, and are in no sense dependent on that agreement. Nor for that matter is the merit of plaintiff's earlier discharge even relevant to a disposition of his claims. It follows that plaintiff's claims are not pre-empted and the six month statute of limitations for hybrid claims established by the Supreme Court in *DelCostello* does not bar those claims.

## CONCLUSION

For the reasons given above, defendants's motions to dismiss are denied. The parties shall complete all discovery on or before October 25, 1993, and shall appear before the Court for a Pre-Trial Conference on October 29, 1993 at 10:30 AM in Courtroom 129.

It is **SO ORDERED.**

---

3.  *Allis–Chalmers* involved a suit based upon alleged bad faith in handling an insurance claim, a tort under Wisconsin law. In that case, an employer funded a health insurance plan which was incorporated by reference into a collective bargaining agreement with the union. Since the

duty of good faith created by the collective bargaining agreement was inextricably connected with the managing of the health plan incorporated therein, the Court found the claim to be pre-empted.